UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENT COMPANIES, INC., and
KENT COMPANIES, INC.
EMPLOYEE HEALTH PLAN,

               Plaintiffs,

                                     CASE NO. 14-CV-13070
v.                                  HONORABLE GEORGE CARAM STEEH

BLUE CROSS AND BLUE SHIELD
OF MICHIGAN,

               Defendant.

_____/

## OPINION AND ORDER

      This lawsuit is one among more than fifty similar cases brought against defendant

Blue Cross and Blue Shield of Michigan ("BCBSM") for allegedly charging hidden

administrative fees by, among other things, inflating hospital claims with hidden surcharges

in violation of the Employment Retirement Income Security Act of 1974 ("ERISA"), 29

U.S.C. §1001 *et seq.*  Now before the court is defendant's motion to dismiss the claims as

time-barred and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

Also before the court is plaintiffs' motion for partial summary judgment as to liability only.

Oral argument was heard on January 27, 2015.  Because of fact issues concerning

whether plaintiffs knew or should have known of the hidden fees, BCBSM's motion to

dismiss the claims as time-barred shall be denied without prejudice, and plaintiffs' motion

for partial summary judgment shall be denied without prejudice.  BCBSM's unopposed

motion to dismiss the state law claims shall be granted.

## I. Background

Kent Companies, Inc. ("KCI"), a family owned concrete construction firm, on behalf of itself and the Kent Companies Inc. Employee Health Plan ("Plan"), filed a nine-count Complaint on August 7, 2014. Count I alleges that BCBSM breached its fiduciary duty in violation of ERISA, 29 U.S.C. § 1104, and Count II alleges that BCBSM engaged in self-dealing in violation of ERISA, 29 U.S.C. § 1106. Counts III through IX allege various state claims. BCBSM moved to dismiss the state law claims, and plaintiffs did not oppose that motion. Accordingly, the state law claims shall be dismissed. The court now turns its attention to the ERISA claims that are at the heart of this dispute.

BCBSM has been the third-party administrator of plaintiffs' self-insured employee benefit Plan since June 19, 2001, when the parties executed their Administrative Services Contract ("ASC"). Under the ASC, BCBSM agreed to administer the Plan by paying covered employee health care claims using money provided to it by KCI, and granted KCI employees access to BCBSM's provider networks. In exchange, BCBSM collected administrative fees. The parties renewed the ASC each year from 2001 to 2008 by completing a Schedule A. While the ASC did not contain any pricing terms, the Schedule A enumerated the fees. Together the ASC and the Schedule A formed the parties' contract. The ASC required BCBSM to provide plaintiffs with a detailed settlement showing the amounts billed to and owed by KCI.

Plaintiffs allege that BCBSM increased its administrative fees in the late 1980s, but when self-funded plans balked at the hefty charges, and BCBSM lost as many as 225,000 members in 1989 alone, thereafter BCBSM began hiding administrative charges by burying them in marked-up hospital claims. In its new system begun in 1993, plaintiffs allege that

BCBSM submitted inflated hospital bills to its customers, and then pocketed the difference between the amounts actually paid to the hospital and the inflated amounts wrongfully charged to the customer, coining its new system "retention reallocation."  Plaintiffs allege that BCBSM decided how much to mark up hospital claims to recoup administrative fees, and the amounts varied widely or were waived for customers who discovered them.

According to the Complaint, the allegedly hidden fees consisted of four components: (1) the "Other Than Group" ("OTG") subsidy, (2) the "Contingency/Risk" surcharge, (3) the "Retiree" surcharge, and (4) the "Network Access" fee.  In addition to the hospital claim mark-ups, plaintiffs also allege that BCBSM had another fraudulent scheme by which it intentionally overstated physician/professional claims as part of a program known as the Physicians Group Incentive Program ("PGIP").  Under the PGIP, plaintiffs allege that BCBSM inflated the amount charged by a professional, resulting in an increased charge to plaintiffs without reporting the additional fee.

BCBSM was required to complete Form 5500 worksheets to its customers to satisfy annual reporting requirements under ERISA and the IRS Code.  Plaintiffs allege that the hidden fees should have been reported on the 5500 Forms, but were not.  Plaintiffs further allege that BCBSM failed to report the hidden fees on quarterly settlements, renewal documents, and annual settlements.

This case is markedly similar to *Hi-Lex Controls, Inc. v. BCBSM*, 751 F.3d 740 (6th Cir.), *cert. denied,* 135 S. Ct. 404 (2014), where the Sixth Circuit affirmed a $6 million judgment holding that BCBSM had engaged in wrongful self dealing and breached and its fiduciary duty under ERISA when it inflated hospital claims with hidden surcharges in order to retain additional administrative compensation.  Except for the PGIP fees, all of the

hidden fees claimed in this case were also at issue in *Hi-Lex*.  Plaintiffs argue that the *Hi-Lex* decision entitles them to summary judgment as to liability on their ERISA claims.  For the reasons discussed below, *Hi-Lex* does not entitle plaintiffs to summary judgment at this early juncture as distinct factual issues exist here as to when KCI knew, or through due diligence, should have known of the disputed fees.

## II. Standard of Law Re Rule 12(b)(6)

Rule 12(b)(6) allows the Court to make an assessment as to whether the plaintiff has stated a claim upon which relief may be granted.  Under the Supreme Court's articulation of the Rule 12(b)(6) standard in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-56 (2007), the Court must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations present plausible claims.   "[N]aked assertions devoid of further factual enhancement" are insufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  To survive a Rule 12(b)(6) motion to dismiss, plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (*quoting Bell Atlantic*, 550 U.S. at 555) (citations and quotations omitted).   Even though the complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Id.* (*citing Bell Atlantic*, 550 U.S. at 555).

-4-

### III. Analysis: Defendant's Motion to Dismiss

**A.    ERISA's Statute of Limitations**

The parties agree that the ERISA claims at issue here are subject to the limitations period set forth in 29 U.S.C. § 1113.  The statute requires that "a claim be brought within three years of the date the plaintiff first obtained 'actual knowledge' of the breach or violation forming the basis for the claim." *Hi-Lex*, 751 F.3d at 747 (internal quotations marks and citations omitted).  "Actual knowledge means 'knowledge of the underlying conduct giving rise to the alleged violation,' rather than 'knowledge that the underlying conduct violates ERISA." *Id.* (internal quotation marks and citations omitted).  The statute extends the statute of limitations period, however, "in the case of fraud or concealment," in which case "such action may be commenced not later than six years after the date of discovery of such breach or violation." 29 U.S.C. § 1113(2).  In determining when plaintiffs should have discovered the facts giving rise to the ERISA violation, courts employ an objective standard. *J. Geils Band Employee Ben. Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245, 1254 (1st Cir. 1996).

In this case, plaintiffs filed suit on August 7, 2014.  Thus, if the six-year statute of limitations period applicable in cases of fraud or concealment applies, BCBSM must show that plaintiffs were aware of the hidden fees before August 7, 2008 in order to establish that the claims are time-barred.  BCBSM argues that it disclosed the allegedly hidden fees prior to August 7, 2008 in four ways: (1) the ASC, (2) the 2006 Schedule A, (3) the 2007 Schedule A, and (4) the March 12, 2008 annual settlement statement which included a pie chart titled "Value of Blue." Plaintiffs respond that those documents failed to disclose the

hidden fees, and even if they did, defendants continued to give other false reports which prevented them from knowing of the hidden fees.  The court addresses each item below.

## 1.      The ASC

As to the ASC, BCBSM relies on the following provision, "The Provider Network Fee, contingency, and any cost transfer subsidies or surcharges ordered by the State Insurance Commissioner as authorized pursuant to 1980 P.A. 350 will be reflected in the hospital claims cost contained in the Amounts Billed."  (Doc. 9, Ex. A at 7).  In *Hi-Lex*, the district court considered this same language in the ASC and found that it was misleading.  (Doc. 11, Ex. B at ¶ 142).  Dismissal on the basis of the ASC is not warranted here.  Collateral estoppel requires the conclusion that the ASC did not put plaintiffs on notice of the allegedly hidden fees.  *Arkansas Coals, Inc. v. Lawson*, 739 F.3d 309, 320 (6th Cir. 2014) (quoting *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008)).

## 2.      The 2006 and 2007 Schedule A

The court next considers the June 9, 2006 Schedule A signed by KCI's Treasurer Randall Brink which provides:

> A portion of your hospital savings has been retained by BCBSM to cover costs associated with the establishment, management and maintenance of BCBSM's participating hospital, physician and other health provider networks.  The ASC Access Fee also covers any subsidies, surcharges and contributions to reserves ordered by the State Insurance Commissioner as authorized pursuant to P.A. 350.

(Doc. 9, Ex. B at ¶11).  BCBSM contends that the above quoted language was a clear disclosure of the hidden fees.  BCBSM further contends that *Hi-Lex* implies the 2006 Schedule A disclosed the written fees based on the following language in the Sixth Circuit opinion:

-6-

> Language in a Schedule A from 2006 did note that '[a] portion of [Hi-Lex's] hospital savings has been retained by BCBSM to cover provider network costs.' However, even assuming that language provided actual knowledge to Hi-Lex, it did so within the 6-year statute of limitations period.

*Hi-Lex*, 751 F.3d 748, n.10.  BCBSM acknowledges that the above quoted language is dicta and does not conclusively establish that the 2006 Schedule A actually disclosed the disputed fees.  BCBSM also relies on the May 23, 2007 Schedule A which provides:

> A portion of your hospital savings has been retained by BCBSM to cover the ASC Access Fee.  The ASC Access Fee covers (a) costs associated with the establishment, management and maintenance of BCBSM's participating hospital, physician and other health provider networks, (b) charges to help maintain BCBSM's surplus at an appropriate level in compliance with regulatory and Blue Cross and Blue Shield Association standards, and (c) cost transfer subsidies or surcharges authorized pursuant to 1980 P.A. 350, such as the group conversion fee and the 'other than group' subsidy.

(Doc. 9, Ex. C at ¶ 11).  Plaintiffs respond that the 2006 and 2007 Schedule A documents are misleading as they refer to an "ASC Access Fee" which has special meaning under the ASC.  According to that document, "Access Fees" refer to fees paid to out-of-state Blue Cross and Blue Shield plans for processing out-of-state claims at discounted rates. Plaintiffs also argue the 2006 Schedule A did not provide them with notice of the allegedly hidden fees because it refers to fees "ordered by the State Insurance Commissioner," and the fees in dispute were not ordered by the Insurance Commissioner who was not even authorized to impose such fees.  Plaintiffs also respond that the court cannot consider the 2006 and 2007 Schedule A documents in a vacuum, but must consider them in the context of misleading quarterly settlements, annual settlements, and Form 5500 reports from 2006 and 2007 which did not disclose the disputed fees.

The court finds this argument compelling.  In *Pridgeon & Clay Inc. v. BCBSM*, No. 13-cv-11830 (E.D. Mich. Jan. 30, 2015), a related case involving claims that BCBSM

charged the same alleged hidden fees in violation of ERISA, Judge Murphy ruled a 2006 Schedule A did not give plaintiffs notice of the hidden fees because BCBSM continued to provide plaintiffs with Form 5500 reports that were supposed to itemize all commission, fees, and other compensation received or retained by BCBSM but did not disclose the hidden fees.  Judge Murphy explained, "BCBSM cannot cite ambiguous forward-looking language from the Schedule A, subsequently conceal the extent of administrative fees charged in the settlement and reporting documents it later provided to [plaintiff], and then rely on the Schedule A language to argue that [plaintiff] knew or should have known about the disputed fees." No. 13-cv-11830, Doc. 47 at 9.  The court reaches the same conclusion here.  The 2006 and 2007 Schedule A documents did not give plaintiffs actual knowledge of the hidden fees as BCBSM continued to provide false reports concealing the hidden fees during that same time period and thereafter.  Thus, the 2006 and 2007 Schedule A documents do not act as a time bar preventing plaintiffs' claims.

**3.     The "Value of Blue" Pie Chart**

The court turns now to the fourth document which BCBSM claims disclosed the hidden fees more than six-years prior to the filing of this lawsuit.  Specifically, BCBSM relies on the March 12, 2008 Settlement Statement which included a pie chart entitled "Value of Blue" which showed that BCBSM collected an administrative fee of $90,357 and an Access Fee of $64,839 for the contract year ending June 30, 2007.  (Doc. 9, Ex. D at 8).  In addition, the "Value of Blue" reported that Access Fees amounted to 4.36 percent of total costs for the year.  Once again, plaintiffs respond that the document's use of the term "Access Fees" is misleading as that term is used in the ASC to refer to fees "charged by the Host Plan" to be paid to out-of-state Blue Cross and Blue Shield plans for access to

-8-

their networks.  In addition, plaintiffs argue that the "Value of Blue" report cannot be read in a vacuum and must be read in light of quarterly settlements, annual settlements, and Form 5500 worksheets which falsely reported that the only compensation kept by BCBSM was the disclosed administrative fee.

In support of their claim that BCBSM "kept giving Plaintiffs false reports," (Doc. 11 at 10), plaintiffs state, "*See, e.g.,* Pls' 2006/2007 Annual Settlement (**Exhibit H**); Pls' 2006/2007 Form 5500 worksheet (**Exhibit I**)."  *Id.* at 11.  Exhibit H is a settlement statement issued on March 12, 2008 which included the "Value of Blue" pie chart which disclosed the hidden fees, although some of the fees were reported as "Access Fees" which was untrue.  Exhibit I is the Form 5500 for the 2006/2007 period which failed to disclose the hidden fees.  It is unclear if that Form 5500 was produced after the March 12, 2008 settlement statement.  Although plaintiffs claim that BCBSM provided them with numerous false reports after the "Value of Blue" pie chart was produced, they rely only on two documents - the March 12, 2008 settlement statement, which admittedly contained the pie chart, and the Form 5500 for the 2006/2007 time period.  This situation is unlike that in *Pridgeon & Clay*, where Judge Murphy ruled that plaintiffs' ERISA claims were not time-barred because BCBSM continued to provide false reports until 2013, despite the alleged disclosure of the fees in the 2006 Schedule A.  In this case, the parties' contractual relationship ended in 2008, the same year that BCBSM provided the "Value of Blue" pie chart.  Thus, unlike *Pridgeon & Clay*, this case did not involve seven years worth of false reports following the alleged disclosures, but rather the false reports were produced at the same time as the hidden fees were allegedly disclosed.  Under these circumstances, an

-9-

issue of fact exists as to whether the "Value of Blue" pie chart should have given plaintiffs notice of the disputed fees.

BCBSM contends that in the *Hi-Lex* case, the court ruled that the production of a similar "Value of Blue" report as part of an annual settlement meeting, was the date that the *Hi-Lex* plaintiffs should have discovered the alleged breach.  In *Hi-Lex*, however,  the court did not find that Hi-Lex plaintiffs had actual knowledge of the hidden fees on the date that they received the "Value of Blue" report; rather, it was the date of a meeting held two months later when a BCBSM account representative met with Hi-Lex's CFO and two other Hi-Lex representatives and explained page by page each "slice" of the "Value of Blue" report.  (Doc. 12, Ex. A at ¶ 161, 164).  *See Hi-Lex*, 751 F.3d at 747, n.9 ("The district court held that Hi-Lex should have discovered the Disputed Fees when a "Value of Blue" pie chart that depicted the charges was presented as part of an annual settlement meeting with BCBSM on August 21, 2007").  Moreover, in concluding that Hi-Lex should have been aware of the hidden fees as of August 21, 2007, the court also considered the testimony of Hi-Lex's CFO that had he read the renewal packets, projections disclosures, and Schedule A disclosures, he would have been "aware" of the disputed fee pricing arrangement.  *Id.* at ¶ 165.

In this case, the facts at this early juncture are undeveloped as to whether BCBSM representatives met with plaintiffs and explained the disputed fees disclosed in the "Value of Blue" pie charts, as occurred in *Hi-Lex*.  This court cannot find at this pleadings stage that the mere receipt of the pie charts put plaintiffs on notice of the disputed fees.  Unlike the situation in *Hi-Lex,* where plaintiff's CFO testified at trial that if he had read certain documents, he should have been aware of the disputed fees, *id.* at ¶ 165, this case is still

in its infancy, and there has been no testimony reflecting when plaintiffs should have discovered the disputed fees.  While it is clear that the ASC and Schedule A documents did not give plaintiffs notice of the hidden fees, a question of fact exists as to whether the "Value of Blue" report did so.  This, in turn, depends on which documents BCBSM produced to plaintiffs after providing the pie chart, whether or how BCBSM explained the chart, and how KCI representatives understood the disclosures made in that document. In sum, BCBSM has not shown that it is entitled to dismissal on the basis of the statute of limitations based on the limited record now before the court.

## B.    Tolling of Statute of Limitations Period

Plaintiffs also argue that the statute of limitations period was tolled until 2011 based on the pendency of the putative class action in *Pipefitters Local 636 Ins. Fund v. BCBSM*, 722 F.3d 861 (6th Cir. 2013) (*Pipefitters IV*).  *Pipefitters* involved ERISA breach of fiduciary claims against BCBSM arising out of OTG hidden fees.  The case spanned nine years of litigation and was appealed no less than four times.  In *Pipefitters IV,* the Sixth Circuit affirmed an entry of summary judgment for plaintiffs finding that BCBSM's charge of the OTG fee amounted to impermissible self-dealing and breach of fiduciary duty in violation of ERISA.  *Id.* at 869.  While the parties agree that the pendency of class actions can toll the statute of limitations period in certain circumstances, BCBSM argues that such tolling is not available here because (1) *Pipefitters* involved different claims than presented here; (2) equitable tolling principles are not available under ERISA because Congress expressly provided by statute for tolling in the case of fraud or concealment, and KCI is limited to the tolling requirements set forth in 29 U.S.C. § 1113(2); (3) the tolling period should have

ended in 2005 when the district court dismissed the putative class action; and (4) ERISA's § 1113 is a statute of repose which is not subject to equitable tolling.

Although there are as many as 50 related cases against BCBSM arising out of the allegedly hidden administrative fees pending in this district, the court is aware of only one case to decide the issue of whether *Pipefitters* tolled the statute of limitations. On January 16, 2015, after the parties had fully briefed the motions now before the court, Judge Lawson issued his opinion in another ERISA suit against BCBSM involving the same hidden fees at issue here, and ruled that class action tolling applied and thus, plaintiffs' breach of fiduciary duty and self-dealing claims were timely. *Dykema Excavators, Inc. v. BCBSM*, No. 13-cv-12151, 2015 WL 268840, at *10, __ F. Supp. 3d __, (E.D. Mich. Jan. 16, 2015) (Lawson, J.). The Sixth Circuit has not addressed the issue of whether the pendency of a putative class action can toll the statute of limitations period in an ERISA breach of fiduciary case. It is not necessary at this early juncture for the court to address the issue of whether *Pipefitters* tolled the statute of limitations period. For the reasons discussed above, it remains possible that plaintiffs' ERISA claims are timely under the limitations period set forth in § 1113(2). Accordingly, the court does not address the issue at this pleadings stage.

**C.     Whether PGIP Claims Are Time-Barred**

Plaintiffs also allege that BCBSM intentionally overstated physician/professional claims as part of a program known as the Physicians Group Incentive Program ("PGIP') and failed to report these fees. BCBSM argues that these claims are time-barred because plaintiffs signed a Schedule A on May 23, 2007 that disclosed the PGIP fees. Plaintiffs' Complaint alleges, however, that BCBSM submitted false and misleading reports, including

the Form 5500 worksheets, which concealed the PGIP fees, and that BCBSM secretly buried the fees within the amounts reported as professional claims.  (Doc. 1 at ¶ 119). Taking the allegations of the Complaint as true, plaintiffs have sufficiently pled an ERISA violation with respect to the PGIP fees and have alleged that BCBSM engaged in "fraud or concealment" in connection with those fees.  Accordingly, at this early juncture, the court cannot find that the claims are time-barred.

**D.      Whether the Complaint Fails to State ERISA Claims**

BCBSM argues that it did not act as an ERISA fiduciary, and thus cannot be liable for breach, because it merely collected authorized fees from plaintiffs and exercised no discretion.  This is the same argument rejected by the Sixth Circuit in *Hi-Lex*.  Under ERISA:

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).  In *Hi-Lex*, the district court granted Hi-Lex's summary judgment motion on its claim that BCBSM acted as an ERISA fiduciary, and the Sixth Circuit affirmed, finding that BCBSM exercised discretion in collecting the disputed fees because the fees were not universal and in some instances, BCBSM waived the fees entirely.  751 F.3d at 744.  In this case, the Complaint alleges that BCBSM exercised discretionary authority and control over management of the Plan, disposition of the Plan, and administration of the Plan. (Complaint, ¶ 132).  Plaintiffs have adequately pled that BCBSM acted as an ERISA fiduciary such that Rule 12(b)(6) dismissal is unwarranted.

-13-

BCBSM argues that *Seaway Food Town, Inc. v. Med. Mut. of Ohio*, 347 F.3d 610 (6th Cir. 2003) supports its argument that it is not an ERISA fiduciary.  In *Hi-Lex*, the Sixth Circuit summarized the holding of *Seaway*, explaining that while "simple adherence to a contract's term giving a party 'the unilateral right to retain funds as compensation' does not give rise to fiduciary status, a 'term [that] authorizes [a] party to exercise discretion with respect to that right' does."  751 F.3d at 744 (quoting *Seaway*, 347 F.3d at 619).  In this case, the Complaint sufficiently pleads that BCBSM did exercise such discretion; thus, BCBSM's motion to dismiss on the basis that it did not act as an ERISA fiduciary must be denied.

BCBSM also argues that the Complaint's allegations regarding the PGIP fees are facially deficient, and claims arising out of those fees must be dismissed.  Specifically, BCBSM claims that plaintiffs have not adequately pled how those fees were used and whether or not they inured to BCBSM's benefit.  The court has carefully reviewed the Complaint and finds that its allegations regarding the PGIP fees are sufficiently pled and easily survive BCBSM's motion to dismiss.  The Complaint alleges that "[u]nder the PGIP BCBSM added a fee, internally called 'Physician Incentive,' to the amount charged by a professional, resulting in an increased charge to Plaintiffs.  These additional fees were not reported to Plaintiffs at all.  Rather, they were secretly buried within the amounts reported as professional claims expense." (Complaint, ¶ 119).  The Complaint further alleges that, "[i]n other words, BCBSM took portions of Plaintiffs' ERISA Plan Assets that were supposed to be used to pay the professionals that provided services to covered beneficiaries, and instead BCBSM used those funds for its own benefit and at its own discretion."  *Id.* at ¶ 120.

-14-

Plaintiffs have satisfied the strictures of Rule 8 notice pleading; the allegations are sufficient to state plausible claims under ERISA, and withstand scrutiny under *Iqbal*.

## E.     Whether Plaintiffs' ERISA Claims Concern Plan Assets

BCBSM argues that the amounts wired to its bank account were not "Plan Assets" as defined by ERISA.  While conceding that the Sixth Circuit ruled the amounts wired to BCBSM in *Hi-Lex* were "Plan Assets," BCBSM contends that the Sixth Circuit's holding was based on an examination of legal instruments, including a Summary Plan Description, which plaintiffs have not presented here.  This is not a meaningful distinction.  In *Pridgeon & Clay*, Judge Murphy held that the amounts plaintiffs wired to BCBSM's bank account were "Plan Assets."  No. 13-cv-11830, Doc. 47 at 10.  The court reaches the same conclusion here.

## F.     State Law Claims

BCBSM also moves to dismiss plaintiffs' state law claims pled in Counts III through IX.  In their Complaint, as to each state law claim, plaintiffs state, "[t]his Count is alleged to preserve all of Plaintiffs' claims."  (Complaint, ¶¶ 147, 158, 169, 180, 189, 201, 212). Plaintiffs' Complaint further states that as to each state law claim, "[p]laintiffs expect the parties will submit an order for the Court's consideration, approved as to form only, which is consistent with the Court's prior rulings on similar state law claims in the related cases." (Complaint, ¶¶ 148, 159, 170, 181, 190, 202, 213).  In their response brief, plaintiffs do not address BCBSM's argument that their state law claims should be dismissed.  Accordingly, it appears that plaintiffs concede these claims should be dismissed and the court shall enter an order to that effect.

## IV. Standard of Law for Summary Judgment

The court now addresses plaintiff's partial motion for summary judgment on the issue of liability.  Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact  such that  the movant is entitled to a judgment as a matter of law.  *Ventas, Inc. v. HCP, Inc.*, 647 F.3d 291, 324 (6th Cir. 2011)(quoting Fed. R. Civ. P. 56(a)).  A genuine issue of material fact exists when there are "disputes over facts that might affect the outcome of the suit under the governing law."  *V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 465 (6th Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In making a decision on summary judgment, the court must view the facts and all inferences to be drawn from the facts in the light most favorable to the non-moving party.  *Bell v. United States*, 355 F.3d 387, 392 (6th Cir. 2004).

## V. Analysis: Plaintiffs' Motion for Partial Summary Judgment

Plaintiffs contend that the Sixth Circuit's holdings in *Hi-Lex* and *Pipefitters* entitle them to partial summary judgment on the issue of liability.  In *Hi-Lex,* the Sixth Circuit ruled that plaintiffs' ERISA claims were timely and held that under its earlier decision in *Pipefitters IV,* BCBSM was liable for impermissible self-dealing in violation of 29 U.S.C. § 1106(b)1), and for breach of fiduciary duty in violation of 29 U.S.C. § 1104(a)(1).  *Hi-Lex*, 751 F.3d at 750-51.  The Sixth Circuit ruled that *Pipefitters IV* controlled because *Hi-Lex* involved the same ASC, the same defendant, and the same allegations.  Two recent decisions in this district involving the same ERISA claims have ruled in favor of plaintiffs on similar motions for partial summary judgment as to liability.  *Dykema Excavators*, 2015 WL 268840, at *12; *Pridgeon & Clay*, No. 13-cv-11830, Doc. 47 at 11.  Those cases are distinguishable

-16-

because in both cases the courts rejected BCBSM's argument that plaintiffs' claims were time-barred: Judge Lawson found class action tolling applied; Judge Murphy found BCBSM provided seven years of false reporting documents to plaintiffs which negated any disclosures it allegedly made. By contrast, this court has ruled that a question of fact exists as to whether plaintiffs' claims are time-barred. *Hi-Lex* and *Pipefitters IV* do not entitle plaintiffs to partial summary judgment at this early juncture as discovery has not yet commenced, plaintiffs' representatives have not been deposed, and issues of fact exist as to whether plaintiffs should have discovered the hidden fees more than six-years prior to the filing of their Complaint.

This court has already ruled that an issue of fact exists about whether plaintiffs should have been on notice of the allegedly hidden fees based on the disclosures made in the "Value of Blue" pie chart, when considered in the context of the circumstances surrounding the production of that document. In addition, in *Hi-Lex*, the district court held a nine-day bench trial in which it heard live testimony as well as deposition testimony from Hi-Lex's finance officials and an independent consultant as to the disclosures BCBSM made to them, and their reliance and understandings of those representations. This evidence enabled the court to determine in that case whether plaintiffs exercised due diligence. (Doc. 12, Ex. A at ¶¶ 150-167). In this case, in order to determine if BCBSM breached its fiduciary duty and engaged in wrongful self-dealing, the court will need to determine what, if anything, plaintiffs knew about the allegedly hidden fees, and when if at all, it learned about them. This determination may require consideration of the testimony of KCI representatives which is not presently before the court. In addition, this case involves PGIP fees which were not at issue in *Hi-Lex*.

In support of their motion for partial summary judgment, plaintiffs rely on the affidavit of their Chief Financial Officer Randall Brink that he did not know of the disputed fees at any time prior to August 7, 2008.  (Doc. 11, Ex. K).  In its response to the motion for summary judgment, BCBSM has submitted a Rule 56(d) affidavit of its counsel Kimberly Ruppel to support its argument that additional discovery is needed to respond to the motion for partial summary judgment.  (Doc. 16, Ex. D).  BCBSM contends that it expects to prove that plaintiffs were aware of the disputed fees prior to August 7, 2008 and that plaintiffs failed to use due diligence to uncover the claims.  BCBSM states that it intends to depose Brink and others agents and employees of KCI whose knowledge is implicated.  Because the discovery sought could impact this court's ruling on summary judgment, and discovery has not yet commenced as BCBSM filed a motion to dismiss rather than an answer, defendant's request for discovery shall be granted. *Siggers v. Campbell*, 652 F.3d 681, 696 (6th Cir. 2011).  For these reasons, plaintiffs are not entitled to partial summary judgment on the issue of liability at this pre-discovery stage of the litigation.

## VI. Conclusion

For the reasons stated above, BCBSM's motion to dismiss (Doc. 9) is DENIED WITHOUT PREJUDICE as to plaintiffs' ERISA claims and is GRANTED as to plaintiffs' state law claims.  IT IS FURTHER ORDERED that plaintiffs' motion for partial summary judgment (Doc. 11) is DENIED WITHOUT PREJUDICE.

**IT IS SO ORDERED**.

Dated:  February 26, 2015

s/George Caram Steeh_____
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

-18-

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
February 26, 2015, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk